IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CIVIL ACTION FILE NO.: 4:21-cv-156

| | | |
|---|---|---|
| Hampton Peterman, | ) | |
| Plaintiff, | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| v. | ) | **DEFAULT JUDGMENT AND** |
| | ) | **MOTION FOR ATTORNEYS' FEES,** |
| RAMod Brewers, LLC, Aaron Avery, | ) | **OR IN THE ALTERNATIVE,** |
| and Matthew Rouse, | ) | **MOTION FOR ENTRY OF DEFAULT** |
| Defendants. | ) | |

Plaintiff Hampton Peterman, by and through his undersigned counsel, hereby submits this Memorandum of Law in Support of his Motion for Default Judgment under Federal Rule of Civil Procedure 37 and Motion for Attorneys' Fees, or in the alternative, Motion for Entry of Default under Federal Rule of Civil Procedure 55.

## <u>INTRODUCTION</u>

Two years ago, Mr. Peterman and Defendants Aaron Avery and Matthew Rouse agreed to separate their interests in a local brewery, Big Game Brewing, and go their own ways. Mr. Peterman, Avery, and Rouse agreed that Mr. Peterman was the sole owner of the trademark "BIG GAME BREWING," and that Avery and Rouse, as sole owners of the brewery, would rebrand the brewery and cease all uses of the trademark. But instead of abiding by the agreement, Avery, Rouse, and their new business, Defendant RAMod Brewers, LLC, continued to use the BIG GAME BREWING trademark. Some of their uses continue to today. Defendants also failed to pay monies owed to Mr. Peterman under the sale agreement and related promissory note.

Over the last two years, Defendants have ignored several demands from Mr. Peterman that they abide by the sale agreement, cease and desist use of the trademark, and pay the monies owed. And for the last three months, Defendants have ignored this lawsuit and this Court's orders. Mr. Peterman desires to resolve his claims, but Defendants blatantly refuse to acknowledge this matter.

Mr. Peterman therefore moves the Court for an order of default judgment against Defendants under Rule 37, an award of damages, and an award of his attorneys' fees and costs. In the alternative, Mr. Peterman moves for an entry of default against Defendants under Rule 55(a) for Defendants' failure to "otherwise defend" in this action.

## BACKGROUND

### I. The parties separated their interests in Big Game Brewing, LLC.

In 2018, Mr. Peterman and Avery formed Big Game Brewing, LLC. (D.E. 1, ¶ 9; D.E. 19, Ans. ¶ 9). The LLC operated a brewery, first in Trenton, North Carolina, and then in Kinston, North Carolina. (D.E. 1, ¶ 9; D.E. 19, Ans. ¶ 9). Rouse later obtained an ownership interest in the LLC and joined Mr. Peterman and Avery in the operation of the brewery. (D.E. 19, Countercl. ¶ 4).

In 2021, Mr. Peterman, on the one hand, and Avery and Rouse, on the other, decided to part ways, and so entered into an agreement under which Mr. Peterman sold his interest in the LLC to Avery and Rouse (the "Sale Agreement"). (D.E. 1, ¶¶ 11–12; D.E. 1-1; D.E. 19, Ans. ¶¶ 11–12). Avery and Rouse agreed to pay Mr. Peterman a total purchase price of $20,000. (D.E. 1-1, § 1.2; D.E. 1, ¶ 12; D.E. 19, Ans. ¶ 12). Avery and Rouse paid the first $10,000 to Mr. Peterman upon execution

2

of the Sale Agreement; the remaining $10,000 was secured by a promissory note (the "Note"), executed simultaneously with the Sale Agreement. (D.E. 1-1, § 1.2; D.E. 1-2; D.E. 1, ¶ 15; D.E. 19, Ans. ¶ 15). The Note required Avery and Rouse to pay the remaining $10,000 in monthly installments of $2,000, beginning on August 1, 2021. (D.E. 1-2, at 1). The Note also contained an acceleration clause, through which Mr. Peterman was entitled to declare the remainder of the principal, together with interest, immediately due if Avery and Rouse failed to cure any default within 10 days. (D.E. 1-2, at 1; D.E. 1, ¶ 17; D.E. 19, Ans. ¶ 17).

Also as a part of the Sale Agreement, Avery and Rouse agreed that the trademark, "BIG GAME BREWING" ("the Mark"), which Mr. Peterman previously registered with the U.S. Patent and Trademark Office, belonged solely to Mr. Peterman. (D.E. 1-1, § 1.3; D.E. 1, ¶¶ 10, 13; D.E. 19, Ans. ¶¶ 10, 13). The Sale Agreement required Avery and Rouse to wind down the operation of Big Game Brewing, LLC and cease use of existing signage, merchandise, and other media which contained or used the Mark by July 26, 2021. (D.E. 1-1, § 4.2; D.E. 1, ¶ 14; D.E. 19, Ans. ¶ 14).

Both the Sale Agreement and the Note contain provisions allowing for the recovery of attorneys' fees in the event of a dispute between the parties. (D.E. 1-1, § 5.6; D.E. 1-2, at 2; D.E. 1, ¶¶ 18–20; D.E. 19, Ans. ¶¶ 18–20).

On June 30, 2021, Avery and Rouse formed Defendant RAMod Brewers, LLC. (D.E. 1, ¶ 21; D.E. 19, Ans. ¶ 21). They then merged Big Game Brewing, LLC into RAMod Brewers, LLC. (D.E. 1, ¶ 21; D.E. 19, Ans. ¶ 21).

## II. Defendants breached the Sale Agreement and infringed on Mr. Peterman's Mark.

In spite of the Sale Agreement, Defendants continued to use the Mark after July 26, 2021. They continued to sell goods bearing the Mark and continued to advertise under the name Big Game Brewing, including that they:

- Released a new beer bearing the Mark on or around July 23, 2021, which they then continued to sell after the July 26, 2021 cut-off date, (Plaintiff's First Set of Requests for Admission,[1] attached as **Exhibit A**, at Request for Admission ("RFA") No. 1);

- Continued displaying the Mark in the interior decor of the brewery facility, including wall decals and framed awards and accomplishments, (Ex. A, RFA Nos. 1–2);

- Maintained social media accounts and pages that use the Mark, (Ex. A, RFA No. 8; Affidavit of Hampton Peterman, attached as **Exhibit B**, ¶ 8.a);

- Continued using the Mark on the signage outside of the brewery facility, specifically a sign on the bar building that remained until around August 10, 2021, at which point the bar building was rebranded as The Beer Barn, and a sign on the front brewery building, closest and most visible to traffic, that remained until around September 5, 2021, (Ex. A, RFA Nos. 3–4);

---

[1] As discussed again below, Mr. Peterman served his First Set of Requests for Admission on May 10, 2023. Defendants did not respond, did not object, and did not seek an extension of time. Under Federal Rule of Civil Procedure 36(a)(3), the Requests for Admission are deemed admitted.

4

- Continued using A-frame sidewalk signs bearing the Mark, and maintained use of the Mark on the marquee at the Neuse Sport Shop and the sign on their office space (Ex. A, RFA No. 2); and

- Maintained two billboards, each of which advertised the brewery under the Mark (Ex. A, RFA Nos. 5–7).

After several demands from Mr. Peterman, Defendants eventually resolved some, but not all, of their infringing uses. One of the billboards advertising Defendants' brewery under Mr. Peterman's Mark remained in place until an unknown third party rented that advertising space in October 2022. (Ex. A, RFA No. 6). The other billboard remained in place until June 2023, when it, too, was rented by an unknown third party. (Ex. A, RFA No. 7; Ex. B, ¶ 8.d). Defendants also have yet to resolve all of their uses of the Mark on social media pages. (Ex. A, RFA No. 8; Ex. B, ¶ 8.a).

### III.    Defendants breached the Note.

Avery and Rouse's first payment under the Note was due to Mr. Peterman on August 1, 2021. (D.E. 1-2, at 1). Mr. Peterman did not receive the first payment until August 13, 2021—twelve days after it was due. (Ex. B, ¶ 5). Exercising his right under the Note's acceleration clause, Mr. Peterman notified Avery and Rouse that the outstanding balance of the principal, plus interest, was immediately due and payable no later than September 1, 2021. (D.E. 1-3; Ex. A, RFA No. 9). Mr. Peterman also demanded that Avery and Rouse reimburse his reasonable attorneys' fees in relation to their breach of the Note, as allowed under the Sale Agreement and Note, totaling $2,500. (D.E. 1-3).

Avery and Rouse eventually paid the remaining principal owed under the Note, but refused to pay interest or Mr. Peterman's attorneys' fees. (Ex. B, ¶ 6). Avery and Rouse admit that they owe Mr. Peterman interest and attorneys' fees under the Note. (Ex. A, RFA Nos. 10, 12). As of the date of this Motion, Mr. Peterman is owed $299.25 in interest. (Ex. B, ¶ 6).

## IV. Defendants initially litigated this case, but then ceased defending altogether and admitted liability.

In October 2021, Mr. Peterman instituted this action against Defendants for trademark infringement, unfair and deceptive trade practices, and breach of contract, based on Defendants' continued use of Mr. Peterman's trademark and Defendants' failure to timely pay the monies owed under the Sale Agreement and Note. (D.E. 1). Mr. Peterman properly served Defendants, who then failed to respond within the time allotted by the Federal Rules of Civil Procedure. (D.E. 12, 13). Mr. Peterman moved for entry of default, but shortly thereafter withdrew his motion after agreeing to allow Defendants additional time to answer. (D.E. 17).

Defendants responded to Mr. Peterman's claims in part by filing ten meritless counterclaims and several meritless defenses. (D.E. 19). The parties filed cross-motions to dismiss. (D.E. 21, 27). In December 2022, the Court denied Defendants' motion. (D.E. 33). And in March 2023, the Court granted Mr. Peterman's motion, dismissing all of Defendants' counterclaims and striking some of their defenses. (D.E. 34).

On March 22, 2023, the parties filed their joint Rule 26(f) report. (D.E. 35). The following day, the Court entered the Rule 26(f) Scheduling Order, in which it

adopted the parties' proposed deadlines. (D.E. 36). Under the Scheduling Order, the parties were required to exchange initial disclosures no later than April 21, 2023. (*Id.*). Mr. Peterman timely served his initial disclosures, but Defendants failed to do so. (D.E. 39, 40). After twice attempting and failing to get a response from Defendants, Mr. Peterman moved to compel. (D.E. 39, 40). Defendants did not respond to the motion. The Court granted Mr. Peterman's motion to compel on July 6, 2023, and ordered Defendants to produce their initial disclosures and to show cause by July 14, 2023 why they should not have to pay Mr. Peterson's reasonable expenses, including attorneys' fees, related to the motion to compel. (D.E. 41). Defendants still did not serve their initial disclosures, and they did not respond to the Court's show cause order.

In the meantime, Mr. Peterman attempted to continue forward with discovery, in accordance with the timeline set out in the Scheduling Order. On May 10, 2023, Mr. Peterman served his First Requests for Admissions to Defendants. (Ex. A). Defendants did not respond or otherwise object to the Requests for Admissions, and they did not seek an extension of time. The time for their response has since passed, and, in accordance with Federal Rule of Civil Procedure 36(a)(3), the Requests for Admission are deemed admitted.

Mr. Peterman now brings this Motion for Default Judgment and Motion for Attorneys' Fees, or in the alternative, Motion for Entry of Default.

## <u>ARGUMENT</u>

**I.    The Court should enter default judgment against Defendants under Rule 37.**

Mr. Peterman asks that the Court enter default judgment against Defendants under Rule 37, as a sanction for their violations of the Court's discovery orders.

When a party fails to provide or permit discovery, in violation of a Rule 26(f) scheduling order or an order compelling discovery under Rule 37(a), the Court may enter an order "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(vi).   After all, "[a] district court need not tolerate defiance of reasonable orders." *Inspirational Network, Inc. v. TMH Telemedia Servs. Ltd.*, 2011 WL 5402669, at \*1 (W.D.N.C. Nov. 8, 2011).

Defendants here have violated ***two*** of the Court's orders.  They failed to provide their initial disclosures by the deadline set in the Court's Rule 26(f) Scheduling Order. (D.E. 41).  They then failed to comply with the Court's order compelling them to provide their initial disclosures by July 14, 2023 and to show cause regarding attorneys' fees and expenses.  (*Id.*).  Defendants' failure to comply with the second order shows a particular recalcitrance regarding this action, as Defendants refused to heed the Court's warning "that a failure to comply with this order may result in sanctions." (*Id.*).

So, Mr. Peterman asks the Court to sanction Defendants for their repeated failures to comply with the Court's discovery orders.  Defendants have been given multiple opportunities to participate in this litigation and remedy the missed deadlines, but have blatantly refused.  They have ignored a warning from the Court

that continued refusal to participate could result in serious sanctions. And what's more, they also have now admitted liability as a result of their refusal to respond to Mr. Peterman's Requests for Admission. It is clear that Defendants have no intention of complying with the Court's orders or further participating in this action. This Court need not tolerate Defendants' defiance. *Inspirational Network, Inc.*, 2011 WL 5402669, at *1.

Therefore, default judgment against Defendants is warranted. Mr. Peterman asks the Court to find Defendants liable on all of Mr. Peterman's claims, award damages, and award his reasonable attorneys' fees and costs associated with this litigation as a whole.

## II. Mr. Peterman has suffered actual damages, most of which are to be trebled under N.C. Gen. Stat. § 75-16.

As a result of Defendants' trademark infringement, unfair and deceptive trade practices, and breach of the Sale Agreement and Note, Mr. Peterman has suffered actual damages.

*First*, Defendants owe **$299.25** in unpaid interest under the Note. (Ex. A, RFA No. 10; Ex. B, ¶ 6).

*Second*, as shown in the attached Affidavit, Mr. Peterman reasonably and conservatively estimates that Defendants' trademark infringement (and thus unfair and deceptive trade practice and breach of the Sale Agreement) caused him **$54,060.00** in actual damages over the last two years. (Ex. B, ¶¶ 13–15). Specifically, Mr. Peterman had plans with a potential business partner to brew and sell beer under the Mark. (Ex. B, ¶ 9). But due to Defendants' continued use of the Mark—which

continues to today—consumers believe Defendants and their brewery are still associated with or known by the Mark. (Ex. B, ¶ 10). This confusion has prevented Mr. Peterman from moving forward with his plans to brew and sell beer under his Mark. (Ex. B, ¶ 11).

Mr. Peterman calculated his damages based on his past experience and records of brewing and selling beer, including records related to the start-up and operation of Big Game Brewing. (Ex. B, ¶ 12). In reaching his damages total of $54,060.00, Mr. Peterman based his calculations on the lower end of anticipated productivity, and did not include lost opportunities for expansion or growth that he reasonably anticipated having in the first two years of operation. (Ex. B, ¶ 15).

Under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), Mr. Peterman's damages "shall be" trebled. N.C. Gen. Stat. § 75-16. Mr. Peterman thus is entitled to an award of **$162,180.00** for Defendants' continued use of his Mark.

In total, Mr. Peterman asks that the Court enter judgment against Defendants in the amount of **$162,479.25** (the interest owed, plus the trebled trademark infringement damages), plus post-judgment interest under 28 U.S.C. § 1961. Or, in the alternative, Mr. Peterman asks the Court to schedule a hearing on damages, at which time Mr. Peterman will provide further evidence of his damages.

### III. Mr. Peterman is entitled to his reasonable attorneys' fees and costs.

Mr. Peterman is entitled to his reasonable attorneys' fees and costs associated with enforcing the Sale Agreement and Note and with enforcing his sole ownership rights of the Mark.

### a. Defendants must pay Mr. Peterman's attorneys' fees and costs under the Sale Agreement.

The Sale Agreement and Note each contain a provision allowing Mr. Peterman to recover his attorneys' fees.[2] Mr. Peterman seeks his fees and costs under Section 5.6 of the Sale Agreement, which states:

> 5.6 **Attorneys' Fees**. If either party brings a claim or lawsuit against the other party to this Agreement to interpret or enforce any of the terms of this Agreement, or to interpret or enforce the [Note] . . . , the prevailing party shall, in addition to all other damages, be entitled to reasonable attorneys' fees and costs, costs of witnesses, and costs of investigation from the non-prevailing party.

(D.E. 1-1, § 5.6).

Mr. Peterman filed this lawsuit to enforce the terms of the Sale Agreement, which included Defendants' agreement to cease all uses of the Mark and to timely pay the monies owed under the Note. (D.E. 1). Section 5.6 of the Sale Agreement thus entitles Mr. Peterman, as the prevailing party, "to reasonable attorneys' fees and costs . . . and costs of investigation from" Defendants. Further, Defendants admit that they owe Mr. Peterman's reasonable attorneys' fees and expenses incurred as a

---

[2] The Note's attorneys' fee provision reads in relevant part:

> Upon default the holder of this Note may employ an attorney to enforce the holder's rights and remedies and the maker, principal, surety, guarantor and endorsers of this Note hereby agree to pay to the holder reasonable attorneys fees not exceeding a sum equal to fifteen percent (15%) of the outstanding balance owing on said Note, plus all other reasonable expenses incurred by the holder in exercising any of the holder's right and remedies upon default.

(D.E. 1-2, at 2). As described above, Defendants eventually paid the remaining principal. However, they did so after Mr. Peterman employed counsel to seek enforcement of the Note. Defendants admit that they owe Mr. Peterman his attorneys' fees and expenses under the Note, (Ex. A, RFA No. 12), which are also covered by the Sale Agreement's broader attorneys' fees provision.

result of his attempts to enforce the terms of the Sale Agreement and Note. (Ex. A, RFA Nos. 11–12).

In short, terms of the Sale Agreement require Defendants to pay Mr. Peterman his reasonable attorneys' fees and costs related to the investigation, preparation, filing, and litigation of his claims, which, as of the date of this Motion, total **$51,813.00**.

### b. Mr. Peterman is entitled to his attorneys' fees and costs related to his trademark claim under the Lanham Act.

In addition to the attorneys' fees provision in the Sale Agreement, Mr. Peterman is also entitled to his reasonable attorneys' fees and expenses related to his trademark infringement claim, under the Lanham Act.

A court may award reasonable attorneys' fees to a prevailing party in a trademark infringement action in "exceptional cases." 15 U.S.C. § 1117(a). A prevailing party need only prove that a case is exceptional by a preponderance of the evidence. *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 484 (4th Cir. 2018). And "[n]either misconduct nor bad faith is required for a case to be 'exceptional.'" *Citi Trends, Inc. v. Coach, Inc.*, 780 F. App'x 74, 80 (4th Cir. 2019). A court may find a case "exceptional" under § 1117(a) when it determines, under the totality of the circumstances, that:

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

12

*Verisign, Inc.,* 891 F.3d at 483–84. Only one of these factors must be met. *Gravelle v. Kaba Ilco Corp.*, 2018 WL 10320623, at *3 (E.D.N.C. Mar. 16, 2018). Here, Defendants' conduct satisfies all three factors.

*First*, Defendants' position in this litigation, at least when they were participating in the action, was objectively unreasonable. They expressly agreed—and admitted in their pleadings—that the Mark belongs solely to Mr. Peterman and that they would cease all uses of the Mark by July 26, 2021. (D.E. 1, ¶¶ 13–14; D.E. 19, Ans. ¶¶ 13–14). Yet they did not take appropriate steps before or during this litigation to cease all uses of the Mark and otherwise resolve Mr. Peterman's claim. (Ex. A, RFA Nos. 1–8; Ex. B, ¶¶ 8, 10). Such a deliberate refusal is objectively unreasonable and makes this matter an exceptional case.

*Second*, Defendants litigated this case in an unreasonable manner. Sanctionable conduct is not required to show that a party litigated in an unreasonable manner; unreasonable conduct that falls short of sanctionable can suffice. *Verisign, Inc.,* 891 F.3d at 487. But Defendants *have* engaged in sanctionable conduct. They have repeatedly ignored the Court's orders, including an order compelling their compliance with the Scheduling Order and a show cause order. Defendants thus have litigated this case in an unreasonable manner, again causing this matter to be an exceptional case and warranting an award of attorneys' fees.

*Third*, the particular circumstances of this case show a need to advance considerations of compensation and deterrence. A court may award attorneys' fees as a means "to deter repeated instances of [trademark] infringement," *Kirtsaeng v.*

*John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016), or as a means to discourage "unreasonable actions without fear of any consequences," *Tessler v. Nat'l Broadcasting Co., Inc.*, 2010 WL 3835064, at *4 (E.D.Va. July 15, 2010), *report & recommendation adopted in relevant part by* 2010 WL 3835061, at *4–5 (E.D.Va. Sept. 29, 2010) (addressing this third factor in the text of a Copyright Act claim). Defendants knowingly and willingly infringed on Mr. Peterman's Mark, and continued to do so for nearly two years—despite repeated demands from Mr. Peterman that they cease all uses of the Mark. And Defendants acted unreasonably in this litigation when they stopped responding to Mr. Peterman, and more importantly, to the Court. This matter thus is an exceptional case, in that the particular circumstances demonstrate a need for compensation of Mr. Peterman's efforts to enforce his trademark rights and to deter Defendants' continued use of the Mark and repeated violations of the Court's orders.

For these reasons, this matter is an exceptional case, and Mr. Peterman asks the Court to award attorneys' fees and costs under the Lanham Act.

### c. Mr. Peterman also is entitled to his attorneys' fees and costs under the UDTPA.

Mr. Peterman also is entitled to his attorneys' fees under the UDTPA.

Under the UDTPA, a court may award reasonable attorneys' fees on finding that the defendant "willfully engaged in the [unfair or deceptive] act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. § 75-16.1(1).

14

As discussed above, Defendants knew of, *and expressly agreed to*, their obligations regarding Mr. Peterman's Mark, but did not abide by those obligations. Defendants knowingly and willingly infringed on Mr. Peterman's Mark, and continued to do so despite multiple demands from Mr. Peterman that they cease all uses of the Mark. Not only that, but they wholesale stopped responding to Mr. Peterman and the Court. Defendants therefore have demonstrated "an unwarranted refusal . . . to fully resolve this matter." N.C. Gen. Stat. § 75-16.1(1).

Because Defendants "willfully engaged in the [unfair or deceptive] act or practice" and exhibited "an unwarranted refusal . . . to fully resolve the matter," Mr. Peterman is entitled to an award of his reasonable attorneys' fees and costs under the UDTPA.

### d. Mr. Peterman's fees and costs are reasonable.

The attorneys' fees and costs that Mr. Peterman seeks under the Sale Agreement, the Lanham Act, and the UDTPA are reasonable. Specifically, the facts and law show that the rates sought are reasonable and the time spent was appropriate.

In awarding attorneys' fees, courts "first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended)." *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). In doing so, courts may consider the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations

15

imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008).  The fees sought here are appropriate under this standard.

*First*, the hourly rates for the work performed on this case were reasonable, customary, and comparable to the rates of other attorneys. (Declaration of Joseph A. Schouten, ¶ 13, attached as **Exhibit C**; *see also* Affidavit of Jennifer Van Zant, ¶¶ 5–7, 14, attached as **Exhibit D**, which was recently filed in support of a motion for attorneys' fees in an unrelated North Carolina Business Court matter).  Indeed, this Court previously determined (in a separate matter) that the hourly rates of Mr. Peterman's counsel were reasonable.  *VOIT Techs., LLC v. Del-Ton, Inc.*, 2018 WL 3732671, at *2 (E.D.N.C. Aug. 6, 2018); *VOIT Techs., LLC v. Del-Ton, Inc.*, 2019 WL 13257811, at *2 (E.D.N.C. Apr. 24, 2019).  Other federal and state courts in North Carolina have found the same.  *E.g.*, *Trove Brands, LLC v. Aieve LLC*, 3:21-CV-196-RJC-DSC, text-only order entered on Feb. 9, 2022 (W.D.N.C.); *Vitaform, Inc. v. Aeroflow, Inc.*, 2021 WL 6049878, at *5 (N.C. Super. Ct. Dec. 15, 2021); *see also McManus v. Dry, P.A.*, 2023 WL 3479386 (N.C. Super. Ct. May 5, 2023) (finding hourly rates as high as $700 per hour to be reasonable).

*Second*, the hours expended were necessary to properly represent Mr. Peterman in this action. (Ex. C, ¶¶ 5, 14).  Defendants' conduct throughout the last two years required Mr. Peterman to, among many other things:

16

- Issue a demand that Defendants cease use of the Mark and that Defendants pay the remainder of principal owed under the Note;

- Prepare, file, and serve the Complaint;

- Prepare and file a motion for entry of default and supporting memorandum when Defendants did not timely answer the Complaint;

- Prepare and file a withdrawal of the motion for entry of default, in the interest of litigating this case on the merits;

- Prepare and file a motion to dismiss, supporting memorandum, and reply memorandum regarding Defendants' *ten* meritless counterclaims and several meritless defenses, which motion was granted;

- Prepare and file a memorandum in response to Defendants' motion to dismiss, which was denied;

- Confer with defense counsel regarding discovery and prepare and file the parties' Rule 26(f) report;

- Confer with defense counsel regarding selection of a mediator and prepare and file notice of the same;

- Prepare and serve initial disclosures;

- Prepare and serve discovery requests;

- Prepare and file a motion to compel and supporting memorandum; and

- Prepare and file this Motion for Default Judgment and Motion for Attorneys' Fees, as well as supporting memorandum and other supporting documents.

(Ex. C, ¶ 5).  The hours spent in accomplishing these tasks were reasonable and necessary to properly represent Mr. Peterman in this action.

In sum, Mr. Peterman asks that the Court enter an award of attorneys' fees and costs against Defendants in the amount of $51,813.00, which amount results from counsels' reasonable hourly rates multiplied by hours reasonably expended.  Or, in the alternative, Mr. Peterman asks the Court to schedule a hearing on attorneys' fees and/or in camera review, at which Mr. Peterman will provide any such other proof of fees and costs the Court requests.

## IV.    In the alternative, Mr. Peterman seeks an entry of default against Defendants under Rule 55(a).

In the event the Court does not enter default judgment against Defendants for their violations of the Court's discovery orders, Mr. Peterman asks that the Court enter a default against Defendants for their failure to defend in this litigation.

Under Rule 55(a), the clerk of court "must" enter a default against a party that "has failed to plead *or otherwise defend*."  Fed. R. Civ. P. 55(a) (emphasis added). Entry of default (and subsequently default judgment) "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *United States v. Coalition for Healthier Eating*, 2020 WL 4354334, at *2 (E.D.N.C. July 29, 2020).  For example, a failure to "otherwise defend" includes conduct such as a corporate defendant failing to comply with a court's order to retain new counsel. *Alliance Funding Grp. v. McLeanics Tech. Corp.*, 2023 WL 2656557, at *2 (W.D.N.C. Mar. 27, 2023).  It may also include a defendant's failure to cooperate with discovery. *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992).

18

Defendants have entirely stopped defending in this litigation. Since April 2023, they have ignored their obligations under the Court's Scheduling Order, ignored communications from Mr. Peterman's counsel, ignored Mr. Peterman's Motion to Compel, ignored Mr. Peterman's Requests for Admission, and ignored this Court's order compelling compliance with the Scheduling Order and to show cause regarding attorneys' fees. As a result of Defendants' actions, "the adversary process has been halted because of an essentially unresponsive party." *Coalition for Healthier Eating*, 2020 WL 4354334, at *2. It is clear that Defendants have "failed to . . . otherwise defend," and have no intention of resuming a defense any time soon.

Mr. Peterman therefore is entitled to an entry of default against Defendants.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Default Judgment and Motion for Attorneys' Fees, or in the Alternative, his Motion for Entry of Default.

This the 31st day of July, 2023.

/s/ *Jordan M. Spanner*
Joseph A. Schouten
N.C. State Bar I.D. No.: 39430
email: jas@wardandsmith.com
Jordan M. Spanner
N.C. State Bar I.D. No.: 53622
email: jmspanner@wardandsmith.com
For the firm of
Ward and Smith, P.A.

Post Office Box 33009
Raleigh, NC  27636-3009
Telephone:  919.277.9100
Facsimile:  919.277.9177
*Attorneys for Plaintiff*

20

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2023, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE DEFAULT JUDGMENT with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed the documents to the following non CM/ECF participants:

Josiah J. Corrigan, Esq.
Perry, Perry & Perry
518 Plaza Boulevard
Kinston, NC  28501
Email:  josicor@gmail.com

*/s/ Jordan M. Spanner*
Joseph A. Schouten
N.C. State Bar I.D. No.:  39430
email:  jas@wardandsmith.com
Jordan M. Spanner
N.C. State Bar I.D. No.:  53622
email:  jmspanner@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC  27636-3009
Telephone:  919.277.9100
Facsimile:  919.277.9177
*Attorneys for Plaintiff*

211068-00001
ND:4882-4378-1486, v. 1

21